Glenda Mae DOUGLASS (now Richey), Respondent,

v.

George SAFIRE, Appellant,

v.

Michael RICHEY, Respondent.

No. WD 36606.

Missouri Court of Appeals, Western District.

Oct. 28, 1986.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 23, 1986.

Application to Transfer Denied Feb. 17, 1987.

William J. Cason, Clinton, for appellant.

Stanley Brian Cox, Sedalia, for respondent.

Before LOWENSTEIN, P.J., and TURNAGE and GAITAN, JJ.

GAITAN, Judge.

Plaintiff/respondent, Glenda M. Douglass (hereinafter referred to as Douglass or plaintiff) sued defendant/third-party plaintiff/appellant, George Safire (hereinafter referred to as either Safire or third-party plaintiff) for injuries resulting from a collision between a motorcycle, on which she was a passenger, and an automobile driven by Safire. The motorcycle was driven by Michael Richey, third-party defendant/respondent (hereinafter referred to as Richey or third-party defendant). Plaintiff submitted her claim on the theory of negligence in either failing to keep a careful lookout or failing to yield the right-of-way. Safire submitted contributory negligence

on the part of Douglass in failing to warn her driver. Safire also submitted a claim for contribution or indemnity, and a claim for property damage against Richey for failure to stop, swerve, slacken his speed or sound a warning. The jury returned a verdict for plaintiff and assessed fault as follows: plaintiff, 0%; defendant, 85%; third-party defendant, 15%. The jury found for Richey on Safire's claim for property damage.

Safire appeals the judgments alleging the trial court erred in the following respects: (1) giving Instruction No. 12, a modified MAI 4.01; (2) failing to discharge the jury panel on the basis of voir dire examination by plaintiff concerning the jury's willingness or ability to award a specific verdict amount; (3) failing to sustain his objection to plaintiff's reference to a liability insurance company during voir dire; (4) failing to submit Safire's tendered instruction on negligence which imputed Richey's negligence to Douglass under an agency theory; (5) submitting Instruction No. 4 which improperly defined "yield the right-of-way" (6) admitting into evidence Douglass' medical bills (exhibits 19–24) because there was insufficient foundation; (7) refusal to give Safire's tendered instruction which would have withdrawn Douglass' personal injuries from the jury's consideration because Douglass failed to establish a causal relationship between her injuries and any act of negligence by Safire; and (8) failing to grant a change of venue.

We find that the trial court erred in submitting Instruction No. 4 defining "yield the right-of-way". The judgments of the trial court are therefore reversed and the case is remanded for new trial.

On May 27, 1981, at approximately noon, Douglass and Richey were traveling west on U.S. Highway 50 in the City of Sedalia, Missouri. Highway 50 has two westbound lanes and two eastbound lanes. As they proceeded west in the centermost lane, they noticed a vehicle at the most westerly exit road leading from the parking lot of Thompson Hills Shopping Center to U.S. Highway 50.

When Richey and Douglass first observed Safire's automobile, it was stopped, or nearly stopped. Richey testified that he and Douglass were approximately 40 yards away when Safire started to cross onto U.S. Highway 50. They assumed that Safire was turning west on U.S. Highway 50 and into the lane in which they were traveling. In response, Richey pulled into the northernmost lane and "started to slow down a little bit, but not very much".

Safire did not turn west on Highway 50, but proceeded north through the intersection. Richey applied his brakes, but was unable to stop his motorcycle. The motorcycle struck Safire's right rear door. Richey testified that at the time of impact, Safire's automobile entirely blocked the northernmost lane of U.S. Highway 50, and part of the vehicle was entering Thompson Road, which was north of U.S. Highway 50. Richey testified that when he observed that Safire's vehicle was in his lane of traffic, he was 20 to 30 feet from the automobile.

Instruction No. 4 given by the trial court defined "yield the right-of-way" in accordance with MAI 14.06 as follows:

The phrase yield the right-of-way as used in these instructions means a driver entering the roadway from a private road is required to yield to another vehicle approaching on the highway.

Safire objected to Instruction No. 4 and tendered his own definition based upon MAI 14.02 which read:

The phrase "yield the right-of-way" as used in these instructions means a driver is required to yield to another vehicle which enters the intersection first.

MAI 14.06 is the proper instruction for an intersection of a private road and a highway, while MAI 14.02 is the proper instruction for an intersection of highways which is not controlled by traffic signals. *MAI 14.02, Notes On Use.*

■ Safire claims that there was insufficient evidence to show that the road upon which he was traveling was a private road so as to support MAI 14.06. We agree. At trial, the third-party defendant's counsel asked plaintiff on cross-examination if the road coming out of the shopping center was a public or private road. Safire objected on the grounds that the question called for speculation and a legal conclusion as to the legal status of the road. The trial court overruled the objection, stating, "Normally, I would sustain that except the words 'private' and 'public' have been used several times as part of this question." Plaintiff then was allowed to answer that the road was private.

Later, on direct examination, Richey was asked if the road coming out of the shopping center was public or private. Safire again objected on the grounds that because Richey was not an expert witness or an owner of the land, he could not testify as to the legal status of the road. The trial court overruled on those grounds, so Safire objected on the grounds that this was not a proper subject for this witness and that there was insufficient foundation. The trial court then sustained the objection as to the form of the question, and Richey was not allowed to answer. Richey was allowed to testify, however, that to his knowledge the road was not maintained by the city, county, or state, and that he had not seen any street signs or speed limit signs on the road. Richey also testified that the road leads to the Thompson Hills Shopping Center, and that he believed the businesses located in the shopping center are privately owned.

■ No foundation was laid to show that plaintiff or third-party defendant was competent to testify as to the legal status of the road upon which Safire was travelling. Moreover, Richey's testimony as to his knowledge of the maintenance of the road, the absence of street signs and the nature of the businesses located in the shopping center was not sufficient to establish that the road was in fact a private road. *See e.g., McDowell v. Mohn,* 426 S.W.2d 95 (Mo.1968).

In *McDowell,* the court considered whether MAI 14.06 should have been given

instead of MAI 14.05 [1]. The evidence in *McDowell* disclosed that two witnesses referred to the road as a private road in distinguishing it from Highway 21. Further, the evidence showed that the road was an entrance and exit to a subdivision wherein many houses were located. The court held that MAI 14.06 was not required, stating:

> The evidence did not show that Jefferson Heights Terrace Road *in fact was a private road in a legal way.* As we understand the evidence two witnesses referred to the road as a private road, not in answer to questions as to whether the road was private or public but to distinguish it from Highway 21. Other evidence offered by plaintiff disclosed Jefferson Heights Terrace Road to be and entrance and exit to a subdivision wherein many houses are located. The record does not establish that the road was in fact private.

[Emphasis added.] *McDowell,* at 97–98.

Similarly, there was not sufficient competent evidence to establish that the road Safire was traveling was in fact a private road. Nor was there evidence to establish that the road was in fact public. The difference between MAI 14.06 and 14.02 is substantial. Under MAI 14.06, Safire was required to yield to Richey and Douglass, regardless of their distance from the intersection, because they were approaching on Highway 50. Under MAI 14.02, the jury would have to consider which vehicle entered the intersection first in order to determine who had the right-of-way.

Plaintiff's case was submitted on either failure to keep a careful lookout or failure to yield the right-of-way. In addition, Safire submitted as third-party plaintiff a property damage claim against Richey. The jury was instructed to apportion fault to Safire if he failed to yield the right-of-way. Therefore, a proper definition of

yielding the right-of-way was necessary to determine any of the parties' claims. There was no evidence to establish whether the road was private or public. We therefore remand for a new trial on the plaintiff's claim against Safire and Safire's claim against Richey.

The judgment of the trial court is reversed and remanded for new trial.

---

1. MAI 14.05 provides, "The phrase 'yield the right-of-way' as used in this [these] instruction[s] means a driver is required to yield at the [stop sign] [yield sign] if the other vehicle is within the intersection or is so close to the intersection that it is an immediate hazzard."

The Notes On Use state that the duty to yield under MAI 14.05 is to be distinguished from the duty to yield when entering a highway from a private road; the latter being covered by MAI 14.06